VOELKER *v.* TYNDALL, MAYOR, ET AL.

[No. 28,302.   Filed November 25, 1947.   Rehearing Denied
March 8, 1948.]

*Earl J. Wynn* and *C. James McLemore,* both of In-
dianapolis, for appellant.

*Arch N. Bobbitt,* Corporation Counsel, and *Henry B.
Krug,* City Attorney for Indianapolis, for appellees.

GILKISON, J.—Appellant filed his amended com-
plaint for replevin in the court below, averring, among

other things, that he was arrested by officers of the Indianapolis Police Department and charged with the misdemeanor of "Disorderly Conduct." That upon his arrest the policeman took his fingerprints with ink on white cards, and his signature, and placed one such card on file in the department, and sent one to the F. B. I. That upon trial of the case in a Municipal Court of Marion County he was acquitted. Thereafter he demanded such fingerprint cards and signature, which demand was refused; that he is the owner and entitled to possession of such fingerprints and name; and that the defendants claim a right to detain the same by virtue of Acts of 1945, ch. 334, p. 1622; § 47-846 *et seq.* Burns' 1940 Repl. Supp., particularly §§ 47-857, 47-858, 47-859, 47-863, 47-865 and 47-866. That so much of this legislation as permits the appellees to retain such fingerprints and signature is unconstitutional being in violation of the Fourteenth Amendment of the Constitution of the United States, and Art. 1, §§ 1 and 21 of the Constitution of Indiana. That the fingerprints and signatures are of the value of $10,000 and their detention is unlawful. He prays judgment for possession, and damages for their detention.

Appellees' general demurrer to the complaint was sustained. Appellant refusing to plead over, judgment was rendered against him, from which this appeal is taken.

Many of appellant's contentions have been determined by this court in the recent case of *State ex rel Mavity* v. *Tyndall* (1946), 224 Ind. 364, 66 N.E. 2d 755 and on second appeal (1947) 225 Ind. 360, 74 N.E. 2d 914.

Appellant bases his claim for possession and damages for detention upon the doctrine of the Right of

Privacy. This is a well established doctrine, derived from natural law and guaranteed by both the Federal and State Constitutions. As between man and man it must be respected. Appellant has cited many authorities to that effect.

However, this right has its limitations. Society too, has its rights. Under our form of government citizens have rights—which even the government may not invade and should the government trespass upon such rights the courts should grant redress. But the citizen has obligations and duties to the community, and to the government which he must keep and perform. To preserve rights for himself he must aid in preserving them for all. There must be cooperation, and always the rights of the individual must be balanced with the duties incumbent upon him as a citizen. *Barber* v. *Time Inc.* (1942), 348 Mo. 1199, 159 S. W. 2d 291; *State ex rel Mavity* v. *Tyndall, supra.*

Long before the enactment of the statute complained of and before the value of fingerprints as a means of identification was known, this court had held that:

"... if, in the discretion of the sheriff he should deem it necessary to the safekeeping of a prisoner, and to prevent his escape, or to enable him the more readily to retake the prisoner if he should escape, to take his photograph, and a measurement of his height, and ascertain his weight, name, residence, place of birth, occupation, color of his eyes, hair and beard, as was done in this case, he could lawfully do so. . . ." *State ex rel. Bruns v. Clausmeier* (1900), 154 Ind. 599, 602, 603.

We have heretofore held the statute complained of to be a constitutional exercise of the police power of the state. *State ex rel Mavity* v. *Tyndall* (1947), 225 Ind.

360, 74 N.E. 2d 914. We adhere to that decision and adopt it as a determination of the constitutional questions presented in this case.

The pertinent question left for determination as between the appellant, an individual citizen, and the appellees, as officers of the City of Indianapolis, in their official and representative capacity, is: Who has a right to the possession of the fingerprints and signature in question?

A bureau of criminal identification and investigation is created and its duties are defined by § 47-857 Burns' 1940 Repl. Supp. By § 47-858 the bureau is authorized to assist chiefs of police and other peace officers in the establishment and operation of local identification systems and it makes it a duty of such chiefs of police and peace officers to cooperate with the bureau in establishing and maintaining an efficient and coordinating system of identification. The duty of chiefs of police and other local officers to make and furnish to the bureau upon request, fingerprints and other identification data is provided for by § 47-863, and § 47-865 provides as follows:

"The members of the department shall have the authority and duty to take fingerprints, and such other identification data as shall be prescribed by the superintendent of all persons taken into custody for offenses other than those arising solely out of violations of fish, game, conservation, traffic laws, or misdemeanors but such members of the department shall have the authority, if they deem it advisable, to take the fingerprints and such other identification data as shall be prescribed by the superintendent, of all persons taken into custody for offenses arising out of violations of fish, game, conservation, traffic laws or misdemeanors and it shall be their duty promptly to transmit and file such fingerprints and other identification data as the superintendent may prescribe."

It will be noted that the taking of fingerprints "and such other identification data as shall be prescribed by the superintendent," of all persons taken into custody for misdemeanors is authorized by this statute and it further makes it the duty of the members of the department after taking the same, "promptly to transmit and file such fingerprints and other identification data as the superintendent may prescribe." The fingerprints and signature taken by the members of the department must be filed away in the files of the bureau and transmitted agreeable with the statute to other police departments mentioned therein, for filing away.

What is the legal object of taking identification data and filing it away in the various police departments mentioned? The answer is given in § 47-866 as follows:

"The employees of the department shall cooperate and exchange information with any other department or authority of the state or with other police forces, both within this state and outside it, and with federal police forces, toward the end of achieving greater success in preventing and detecting crimes and apprehending criminals."

The purpose is single, clear and quite salutary—to promote the public safety, by achieving greater success in preventing and detecting crimes and apprehending criminals. The accomplishment of this object has been an important duty of government in all times. Not infrequently a lack of accurate identification has been a serious handicap in clearing up a crime. It is probable that an accurate identification system, faithfully administered may be an assistance not only in finding the guilty criminal, but in clearing an innocent suspect.

Under the facts as set forth in the complaint and the law as we find it, we think the Indianapolis Police De-

partment is lawfully in possession of the identification data described in the complaint and that it is its duty to keep it on file as the statute commands, for the purposes only as provided by the statute, and as defined by §§ 47-865 and 47-866, *supra.*

Finding no error, the judgment is affirmed.

Note.—Reported in 75 N. E. 2d 548.