**Morris Kolb et al., Appellees, v. Timothy J. O'Connor, Commissioner of Police, Appellant.**

**Gen. No. 47,012.**

First District, Second Division.

May 21, 1957.

Rehearing denied June 12, 1957.

Released for publication June 18, 1957.

John C. Melaniphy, Corporation Counsel of City of Chicago, of Chicago (Sydney R. Drebin, and Harry A. Cooper, Assistant Corporation Counsel, both of Chicago, of counsel) for defendant-appellant.

George M. Crane, of Chicago (Martin J. McGuire, and William D. Reddy, both of Chicago, of counsel) for appellees.

JUDGE McCORMICK delivered the opinion of the court.

The questions involved in this appeal from a declaratory judgment entered in the trial court in favor of the plaintiffs are (1) as to whether or not paragraph 780(e) of chapter 38, Ill. Rev. Stat. 1953, which provides for the return of records of identification upon acquittal or release without conviction of a person whose identification has been recorded upon his arrest, applies to the defendant in the instant case; (2) whether without considering the statute the plaintiffs have a right to the return of such records of identification because their retention would invade plaintiffs' right of privacy; and (3) whether there was a mis-joinder of parties plaintiff.

The petition for declaratory judgment in substance alleged that one Kolb and Paull had been arrested on the charge of receiving stolen property; that they were indicted and subsequently on a trial in the Criminal Court of Cook County were found not guilty and discharged; that one Schlofsky was arrested with Paull and Kolb and discharged from custody without any charge having been placed against him; that Anthony and Angelo Angelos had been arrested,

charged with disorderly conduct, contributing to the delinquency of a minor and selling liquor to a minor, from all of which charges they were subsequently acquitted and discharged; that Richard LaPaPa was arrested, charged with an attempted rape and was subsequently acquitted and discharged; that finger-prints, photographs and other records and memoranda of identification were taken from them by Timothy J. O'Connor, chief police officer of the City of Chicago, and other police officers as his agents; that the said records of identification were kept in the files of the criminal department of the Chicago police department "where they are on view to the general public, who have been victims of various crimes committed in this vicinity, and who have seen the said photographs and other memoranda of identification to the embarrass-ment and in violation of the rights of the petitioners herein." It is further alleged that the petitioners have never been arrested prior to the occasions set forth and have all enjoyed excellent reputations; that a demand had been made by each of them upon the commissioner of police to either remove or destroy such records of identification. The complaint is based upon the above mentioned section of the Criminal Code and upon a general allegation of an invasion of the right of privacy of the petitioners. It was prayed that the court enter a declaratory judgment that they are entitled as a "matter of right, justice and equity to the removal and/or return to them" of such records of identifica-tion.

The defendant Timothy J. O'Connor, commissioner of police of the City of Chicago, filed a motion to strike the plaintiffs' petition, which alleged, among other grounds, that the said section of the Criminal Code did not apply to the defendant; that the records men-tioned in the petition were public records, the return or destruction of which would be contrary to public policy; and that the parties were improperly joined

because their causes of action, if any, do not arise out of the same transaction or series of transactions.

The court entered an order denying the defendant's motion to strike the plaintiffs' petition for declaratory judgment. The defendant elected to stand on his motion and the court entered an order for declaratory judgment on November 28, 1955, in which order the court found that there was no misjoinder of parties plaintiff; that paragraph 780(e) of chapter 38, Ill. Rev. Stat. 1953 "is not vague and indefinite as to who is required to return and/or remove" the records of identification, and the court further found that the plaintiffs and each of them "are entitled as a matter of right, justice, and equity, to the removal and/or the return to them" of the said records of identification. From that judgment order this appeal was taken to the Supreme Court, and by order of that court the cause was transferred here.

The first question to be determined by this court is whether or not the said section of the statute applies to the defendant, a city officer. The section is included in an amendment to the Criminal Code dealing with the department of public safety of the State of Illinois and empowering it to cope with the task of criminal identification and investigation, which amending act provided, among other things, that the department should procure and file for record photographs and other memoranda of identification of all persons convicted for violating any of the criminal laws of any State and of all well-known and habitual criminals. Paragraph 780(e) specifically provides that it is made the duty of sheriffs of the several counties of this State and of the chief police officers of all cities, villages and incorporated towns in this State, to furnish daily to the department copies of fingerprints and photographs of all persons who are convicted of felonies, and of all persons in whose possession at the time of arrest are found goods or property reasonably believed by such

84

sheriffs or chief police officers to have been stolen, of all persons in whose possession are found burglar outfits or tools, or who have in their possession high-power explosives or infernal machines, bombs or other contrivances intended to be used for unlawful purposes, of all persons who at the time of arrest are in possession of firearms or other deadly weapons intended to be used for unlawful purposes, and of all persons having in their possession articles necessary in the making of counterfeit money or the alteration of bank notes and intended to be used for such unlawful purposes. This section provides that "all photographs, fingerprints or other records of identification so taken shall, upon the acquittal of the person charged with the crime, or upon his being released, without being convicted, be returned to him."

No question is raised by the plaintiffs as to the authority of the Chicago police department to take fingerprints, photographs and other memoranda of identification from persons arrested in the City of Chicago. The only contention made by the plaintiffs is that under the above section of the statute it is mandatory that the commissioner of police, as the head of the police department of the City of Chicago, upon their acquittal or release, shall return to them all memoranda of identification taken upon arrest. This is a case of first impression in this State.

In Maxwell v. O'Connor, 415 Ill. 147, the one case in which the section in question was specifically involved, the plaintiff filed a petition, based upon the same section of the Criminal Code above mentioned, before the chief justice of the Criminal Court of Cook County requesting that the defendant, the commissioner of police of the City of Chicago, return to the petitioner all memoranda of identification in the possession of the police department. The trial court in that case sustained the petition and ordered the memoranda returned. The defendant therein took an ap-

peal to the Supreme Court on the ground that the said section of the statute was unconstitutional. The court found that the said section was not vague and indefinite and did not violate the due process provision of the Illinois constitution, and transferred the case to the Appellate Court for the first district. In Maxwell v. O'Connor, 1 Ill.App.2d 124, the Appellate Court held, without passing upon the applicability of the statute to a city official, a question which had not been raised, that the right which the plaintiff seeks to enforce is more in the nature of a right of privacy and therefore involves a civil right and the Criminal Court of Cook County did not have jurisdiction. This is the only case cited to us and the only case we have been able to find in which the section of the statute in question was specifically involved. It is apparent that neither the Supreme Court nor the Appellate Court in that case made any determination of the issue raised before us in the instant case.

In their brief in this court the plaintiffs say that while the section is not as "precise and exact" as it might have been, in spite of that fact the court should construe it liberally and hold that it binds the commissioner of police of the City of Chicago. The entire amendment to the Criminal Code of which the section in question is a part refers to and deals only with the department of public safety of the State. The provision in the section requiring sheriffs and chief police officers to furnish certain memoranda of identification to the department of public safety is placed in the act solely in furtherance of the proper functioning of the said department. It is apparent that under that section the department of public safety alone would have in its custody and under its control the records of identification referred to therein. The mandate in the statute with reference to their return has no applicability to the commissioner of police of the City of Chicago.

86

■ ■ The plaintiffs also urge that they have the right, irrespective of any statutory mandate, to have the records of identification returned to them since their retention and alleged use by the Chicago police department would constitute an invasion of their right of privacy. The right of privacy as a separate and distinct judicial right was first suggested in 1890 in a law review article by Samuel D. Warren and Louis D. Brandeis (later Justice Brandeis of the United States Supreme Court), 4 Harv. L. Rev. 193. Since that time courts have recognized and given effect to that new concept in jurisprudence. It has been recognized in this state. Eick v. Perk Dog Food Co., 347 Ill. App. 293. In the case before us we are dealing with a particular and distinctive application of such right. There is no question that the conflicting rights of an individual must in many cases be subordinated to the rights of the public as a whole. In Crowley v. Christensen, 137 U. S. 86, the court said: "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law."

■ It is necessary in cases of this kind to reach an equilibrium between conflicting rights, the right of the public to protection and the right of the individual to privacy. In considering the right of the public we must take into consideration the increasing incidence of crime, particularly crimes of violence and crimes involving sex, as indicated by well-publicized statistics, and the fact that the automobile, affording mobility to the criminal, has rendered the detection and identification of criminals more difficult than it

87

has ever been in the history of the world, all of which is particularly true in all of the metropolitan centers of the United States, as is shown by the newspaper reports of unsolved and unsolvable crimes of the last few years. Interposed against this is the right of the individual to privacy, which in this case would mean that a person who has been arrested, photographed and fingerprinted should have such records of identification destroyed or returned to him. It is true that under our system of jurisprudence no person is guilty of a crime until he has been convicted thereof. However, as is said in an article by Sidney M. DeAngelis, 27 Temple Law Quarterly 441: "The extent of the actual harm which may befall the injured citizen, is at most, conjectural. On the other hand, the extent of the possible danger to an effective system of law enforcement is considerable. The innocent person of today, unfortunately, may be tomorrow's criminal. The day before some poor soul kills his fellow man, he is an innocent person. The minute possibility that his previously obtained identification records may help to apprehend him and prevent further tragedy is, it is submitted, substantial enough to outweigh the alleged invasion of his right of privacy."

■ In the case before us the only allegation which is made with reference to the use of the records of identification is that they are kept in the files of the police department and exhibited to the victims of crimes committed in the vicinity, for the purpose of permitting them to make identification. The court takes judicial notice that the records of identification retained by the police department of the City of Chicago are not open to the general public. They are retained in the files of the police department, and the photographs therein contained are under certain circumstances exhibited to persons who have been the victims of crime, for the purpose of enabling them to make an identification.

88

The plaintiffs rely upon two cases. One is Poyer v. Boustead, 3 Ill.App.2d 562, which was a suit brought to enjoin a chief of police from forwarding to the Department of Justice in Washington, D. C. the finger-prints and photographs taken at the time of the arrest of the plaintiffs. The Appellate Court upheld the order of the trial court dismissing the petition on the ground that it did not state a cause of action, inasmuch as at the time of the hearing on the complaint there had been no determination whether the plaintiffs were innocent or guilty; but the court did not pass upon, nor have before it, the contention herein raised. The other case relied on is Itzkovitch v. Whitaker, 39 So. 499 (La.). In that case the plaintiff sought to enjoin the inspector of police from placing in the "rogues' gallery" a photo-graph taken of him at the time of his arrest, and the court therein held that the trial court should have entered a temporary injunction and held a hearing to determine whether the evidence would justify making it permanent. It could be gathered from the opinion that the "rogues' gallery" was a place where the pic-tures taken on the arrest were publicly exhibited; in-asmuch as the court ordered that the "gallery will have a small space covered in some way in order to screen this photograph from view. The exhibition will be sus-pended and the distribution of copies stopped."

In State ex rel. Mavity v. Tyndall, 224 Ind. 364, 66 N.E.2d 755, an action brought to compel the city police officers to surrender or destroy the record of identifica-tion made at the time of plaintiff's arrest, the com-plaint alleged that the Indianapolis police department maintained a "rogues' gallery" in which are placed for public exhibition the photographs of persons arrested. The trial court sustained a demurrer to the complaint. The Supreme Court overruled the demurrer and re-manded the case to the trial court to decide, upon a hearing, whether the plaintiff would be entitled to an injunction against such exhibition of his photograph.

In its opinion the court discusses fully the conflicting rights of the public and the individual, analyzes the cases dealing therewith, and calls attention to the fact that in all of such cases the emphasis is placed upon "posting," "publication" and "exhibition" in a public place called the "rogues' gallery," and says:

"Without such a public display of manifest purpose to place an innocent complainant's photograph in juxtaposition with those of hardened criminals, we wonder if the courts would have felt justified in interfering by injunction. . . .

"What is a 'rogues' gallery'? The kind that the Louisiana court had in mind may no longer exist. At least it is not the kind that appellant has described and that is the one with which we must deal. If it actually exists its character is a matter of proof. . . .

"On the facts alleged in the present complaint he is entitled (upon proof) only to an injunction against the exhibition of his photograph in the 'rogues' gallery' above described. As long as the photographs are filed away from public gaze they would seem to be in the same category as the filed fingerprints."

In Voelker v. Tyndall, 226 Ind. 43, 75 N.E.2d 548, in a similar case, the court says:

"What is the legal object of taking identification data and filing it away in the various police departments mentioned? . . .

"The purpose is single, clear and quite salutary—to promote the public safety, by achieving greater success in preventing and detecting crimes and apprehending criminals. The accomplishment of this object has been an important duty of government in all times. Not infrequently a lack of accurate identification has been a serious handicap in clearing up a crime. It is probable that an accurate identification system, faithfully administered, may be an assistance not only in finding the guilty criminal, but in clearing an innocent suspect."

90

In the case before us there is no question of a "rogues' gallery" such as was involved in Itzkovitch v. Whitaker, supra. Here the records of identification were kept in the files of the police department. All but one of the plaintiffs were tried and acquitted. Why the retention and limited exhibition of the records of identification would embarrass them to any greater extent than the appearance of their names in the criminal records of Cook County is difficult to comprehend. The name of the one plaintiff who was discharged by the police after arrest still remains in the records of the police department. There is no contention made, nor have any cases held, that such records could be properly destroyed.

▮ The rights of the individual must be subordinate to the safety of the public. The question involved here is one of public policy. The legislature has not indicated what the public policy of the State should be. Without a specific mandate of the legislature ordering the return to an arrested person of all records of identification held by sheriffs or police departments we are constrained to hold that such departments may retain in their files records of identification such as were here taken, for the purpose of such limited exhibition as is here involved.

The defendant has raised the question of improper joinder of parties plaintiff. Under our determination of the issues herein this question is not pertinent and will not be considered.

The judgment of the Circuit Court of Cook County is reversed.

Judgment reversed.

ROBSON, P. J. and SCHWARTZ, J., concur.