# DOE *v.* COMMANDER, WHEATON POLICE DEPARTMENT ET AL.

[No. 63, September Term, 1974.]

*Decided December 4, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Edward L. Genn* for appellant.

*Emory A. Plitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for Superintendent, Maryland State Police and Attorney General, part of appellees. *Gerald G. Warren, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney,* and *Alfred H. Carter, Deputy*

*County Attorney,* on the brief, for Commander, Wheaton Police Department et al., other appellees.

MURPHY, C. J., delivered the opinion of the Court.

The appellant was arrested by a security guard at a Montgomery Ward Department Store in Wheaton, Montgomery County, Maryland on March 21, 1973, and later charged with committing an unnatural and perverted sexual act in violation of Maryland Code (1971 Repl. Vol.) Art. 27, § 554. On July 19, 1973, the State entered a nolle prosequi in the case, thereby terminating all criminal proceedings against the appellant. On August 27, 1973, the appellant filed a "Petition to Expunge Arrest Records" in the Circuit Court for Montgomery County, in equity, naming Montgomery County and State and County law enforcement officers as defendants. Appellant alleged in the petition that the criminal charges filed against him were "unfounded" and had been dismissed "after a complete explanation" of the circumstances; that appellant had no criminal record "save this erroneously placed charge"; that appellant was employed in a position of trust and confidence at Georgetown University Law Center; that because of his criminal arrest record, he will be irreparably damaged "in that his opportunities for future employment will be adversely affected, and his constitutional right to privacy infringed upon"; that a suit for money damages could not compensate him "for the damage he has suffered and will continue to suffer in the future and cannot correct the harm done . . ."; and that his criminal arrest record "creates a permanent scar on . . . [his] totally exemplary, hardworking and law-abiding mode of living in the community." The petition contained a prayer for the following equitable relief:

(1) An order restraining further dissemination of appellant's criminal arrest records;
(2) The return to him of all such original records and copies;
(3) An accounting in writing for all copies not

returned and securing of these copies for return to appellant;

(4) Removal of all references to appellant in any computer data banks;

(5) Notification to the court of all recipients of computer information;

(6) The placing of certain explanations of the circumstances of the case in court files;

(7) An order directing the defendants to seek return or removal of materials relating to appellant from FBI files and computer data banks;

(8) A certification by defendants of compliance with the court's order; and

(9) Any other additional relief the court deemed just and proper.

The defendants Brown, Watkins,[1] and Montgomery County demurred to the petition, claiming that it contained insufficient facts to state a cause of action against them; that a suit for false arrest and malicious prosecution provided appellant with an adequate legal remedy; that absent statutory authority the court was without power to order expungement of arrest records; that appellant did not allege any facts to establish that the arrest and subsequent identification process were improper or invalid; and that the expungement and destruction of validly made arrest records was contrary to public policy and to the need for accurate information of criminal activity regardless of the ultimate disposition of the prosecution. Defendants Kavanaugh and Burch,[2] in a motion raising preliminary objection (Maryland Rule 323), urged the court to dismiss the case for lack of jurisdiction over the subject matter of the petition; they claimed that the only statutory authority for expungement of arrest records is contained in § 292 of Article 27; that it is limited in application to certain cases involving controlled dangerous substances, and that in the absence of any other

---

1. Respectively, the Commander of the Wheaton Police Department and the Chief of the Montgomery County Police Department.

2. Respectively sued as the Superintendent of the Maryland State Police and the Attorney General.

statute making it compulsory for the police to expunge or return records of an arrested person upon his release without being tried or convicted, a bill in equity to compel such action would not lie.

In a brief order granting both the demurrer (without leave to amend) and the motion raising preliminary objection, the court said:

> "It is apparent that the legislature intended to grant the Courts authority to expunge arrest records in one specific instance, to-wit, drug abusers who are first offenders, (*Article 27, Section 292, Annotated Code of Maryland*). While the powers of an Equity Court are quite general, an Equity Court may not create a right where none exists. Accordingly, the relief sought by the plaintiff must, at this juncture, be denied. . . ."

From this order, appellant filed an appeal to the Court of Special Appeals. Because it was of importance that the question presented be promptly decided, we granted certiorari on our own motion prior to argument and decision in the Court of Special Appeals. See Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-201.

Appellant argues on appeal, as he did below, that an equity court in Maryland is empowered to order expungement or limit dissemination of criminal arrest records in instances where there is no evidence of any kind that the arrested person committed any criminal offense. He maintains that the factual averments of his petition show an invasion of his constitutional right to privacy — a right recognized by the Supreme Court of the United States in *Griswold v. Connecticut*, 381 U. S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). He asserts that as a person acquitted of criminal conduct, the continuing inclusion of his name among the defendants' criminal arrest records, in violation of his constitutional right to privacy, causes him irreparable injury, which cannot be compensated by money damages, and that because an equity court will not suffer a wrong without a remedy, the lower court erred in concluding that it

lacked subject matter jurisdiction to grant the relief requested in the petition.

The appellant contends that the magnitude and effect of the wrong perpetrated against him is substantial; that present day technology and modern police investigatory procedures have combined to produce a situation in which the arrested individual has a criminal record on file in at least one or more law enforcement centers; that it is widely known that local and state law enforcement agencies forward their data pertaining to arrests to the Federal Bureau of Investigation and that the number of people affected by these practices is staggering; that there is incalculable economic and personal harm to an individual that results if his arrest becomes known to employers, credit agencies or even neighbors; and that notwithstanding the absence of a conviction, the mere record of arrest often works as a serious impediment and basis of discrimination in the search for employment, in securing professional, occupational or other licenses, and in subsequent relations with the police and the courts. Appellant asserts that most employers and employment agencies inquire whether an applicant has been arrested and that an affirmative answer to this question, regardless of whether a conviction resulted, is often sufficient to deny the applicant further consideration, and that where there are two or more. applicants for the same job, those with previous arrest records clearly stand in less favorable position than do other applicants.

## I.

To "expunge" a record, in common parlance, is "to strike out, obliterate, or mark for deletion . . . to cause the physical destruction of . . ." Webster's Third New International Dictionary. Although courts have not been uniform in their usage of the term in cases involving criminal arrest records, it appears that "expungement" at least in a general sense may also consist of the return of the record to the person accused or the sealing or segregation of the record in a

secure place to prevent public or private access. *See* 57 Op. Att. Gen. 518 (1972); 58 Op. Atty. Gen. 340 (1973). Cases dealing with the right of an exonerated arrestee to have fingerprints, photographs, or other criminal identification or arrest records expunged or their dissemination restricted are collected in an exhaustive annotation appearing at 46 A.L.R.3d 900-33 (1972). The cases fall generally into four groups.

Some courts reaching the merits of the issue weigh heavily the need for public safety and effective law enforcement and classify the problem as one for the legislature. *Herschel v. Dyra,* 365 F. 2d 17 (7th Cir. 1966) *cert. denied* 385 U. S. 973, 87 S. Ct. 513, 17 L.Ed.2d 436 (1966); *Sterling v. City of Oakland,* 208 Cal.App.2d 1, 24 Cal. Rptr. 696 (1962); *Walker v. Lamb,* 254 A. 2d 265 (Del. Ch. 1969), *aff'd* 259 A. 2d 663 (Del. Supr. 1969); *Kolb v. O'Connor,* 14 Ill.App.2d 81, 142 N.E.2d 818 (1957); *Weisberg v. Police Dept. of Lynbrook,* 46 Misc. 2d 846, 260 N.Y.S.2d 554 (1965).[3] For example, in *Kolb v. O'Connor, supra,* the Illinois court said:

> "In considering the right of the public we must take into consideration the increasing incidence of crime, particularly crimes of violence and crimes involving sex, as indicated by well publicized statistics, and the fact that the automobile, affording mobility to the criminal, has rendered the detection and identification of criminals more difficult than it has ever been in the history of the

---

**3.** However, some decisions adopting this approach do not completely foreclose the court's role in the area. For example, in Mulkey v. Purdy, 234 So.2d 108 (Fla. 1970), the Supreme Court of Florida suggested that a court may order arrest records expunged or destroyed when "strong overriding equitable considerations" are present. *Id.* at 110. And in Roesch v. Ferber, 48 N.J.Super. 231, 137 A. 61 (1957), the court said:

"We have seen that courts recognize that situations may possibly arise where equitable relief such as that sought here may be warranted. However, the equities must be strongly in favor of the complainant for this court to interfere with the valid administrative procedures of our law enforcement agencies." 137 A. 2d at 72.

*See also* State v. Bellar, 16 N.C.App. 339, 192 S.E.2d 86 (1972).

world, all of which is particularly true in all of the metropolitan centers of the United States, as is shown by the newspaper reports of unsolved and unsolvable crimes of the last few years. Interposed against this is the right of the individual to privacy, which in this case would mean that a person who has been arrested, photographed and fingerprinted should have such records of identification destroyed or returned to him. It is true that under our system of jurisprudence no person is guilty of a crime until he has been convicted thereof. However, as is said in an article of Sidney M. DeAngelis, 27 Temple Law Quarterly 441: 'The extent of the actual harm which may befall the injured citizen, is at most, conjectural. On the other hand, the extent of the possible danger to an effective system of law enforcement is considerable. The innocent person of today, unfortunately, may be tomorrow's criminal. The day before some poor soul kills his fellow man, he is an innocent person. The minute possibility that his previously obtained identification records may help to apprehend him and prevent further tragedy is, it is submitted, substantial enough to outweigh the alleged invasion of his right of privacy.' " 142 N.E.2d at 822.

A second group of cases would deny traditional expungement relief, *i.e.*, the return, removal, destruction or sealing of records, but would place certain restrictions on dissemination of arrest record information or the contents of such records. *Menard v. Mitchell*, 328 F. Supp. 718 (D.D.C. 1971), remanded with instructions, *Menard v. Saxbe*, 162 U.S. App. D.C. 284, 498 F. 2d 1017 (1974); *Spock v. District of Columbia*, 283 A. 2d 14 (D.C. App. 1971); [4] *State ex rel. Mavity v. Tyndall*, 224 Ind. 364, 66 N.E.2d 755 (1946); *State*

---

4. Although the District of Columbia decisions rely on local rules to govern content and dissemination of arrest records, Morrow v. District of Columbia, 135 U.S. App. D.C. 160, 173-75, 417 F. 2d 728, 741-43 (1969), suggested that those rules need not be the limit of the court's power over dissemination of records.

*ex rel. Reed v. Harris,* 348 Mo. 426, 153 S.W.2d 834 (1941).[5] In addition, other cases denying expungement relief suggest that a cause of action might be stated in connection with improper dissemination of arrest records. *United States v. Rosen,* 343 F. Supp. 804, (S.D.N.Y. 1972); *Sterling v. City of Oakland, supra.* The older cases in which the court restricted the dissemination of criminal arrest records are based on the power of courts of equity to restrain an invasion of the arrestee's privacy. *State ex rel. Mavity v. Tyndall, supra.* Cf. *Itzkovitch v. Whitaker,* 115 La. 479, 39 So. 499 (1905) and 117 La. 708, 42 So. 228 (1906). *Menard,* borrowing from language applicable to the constitutional right of privacy, holds:

> "Where the Government engages in conduct, such as the wide dissemination of arrest records, that clearly invades individual privacy by revealing episodes in a person's life of doubtful and certainly not determined import, its action cannot be permitted unless a compelling public necessity has been clearly shown." 328 F. Supp. at 726.[6]

A third group of decisions would permit expungement relief in "extreme circumstances," *e.g.,* in instances of an arrest without probable cause or in cases of police misconduct. *See Sullivan v. Murphy,* 156 U.S. App. D.C. 28, 478 F. 2d 938 (1973) (mass arrests where procedures rendered judicial determination of probable cause impossible); *United States v. McLeod,* 385 F. 2d 734 (5th Cir. 1967) (arrests made for sole purpose of harassing civil rights

---

5. The later case of Cissell v. Brostron, 395 S.W.2d 322 (Mo. App. 1965), dissolving an injunction which inhibited dissemination of the arrest records of an individual against whom murder charges were dismissed, rested *inter alia* on the fact that there was no evidence of past or threatened dissemination of the records.

6. The District Court went on to say that it was a matter for Congress in the first instance to determine the public necessity for government conduct, but it then proceeded to narrowly construe the statute authorizing the FBI to collect and exchange arrest records in order to avoid "serious constitutional issues." 328 F. Supp. at 726. Thus, the court found that the FBI was without authority to disseminate arrest records outside the Federal Government for employment, licensing or related purposes. *Id.* at 727.

workers); *Kowall v. United States,* 53 F.R.D. 211 (W.D. Mich. 1971) (petitioner's arrest, conviction and sentence for failure to report for induction were declared invalid); *United States v. Kalish,* 271 F. Supp. 968 (D.P.R. 1967) (prosecutor's attempt to keep photographs and fingerprints amounted to a form of spite); *Bilick v. Dudley,* 356 F. Supp. 945 (S.D.N.Y. 1973) (arrests without probable cause and harassment); *Wheeler v. Goodman,* 306 F. Supp. 58 (W.D.N.C. 1969), remanded on other grounds, 401 U. S. 987 (1971), *aff'd* on remand, 330 F. Supp. 1356 (W.D.N.C. 1971) (extreme misbehavior of police in making arrests without probable cause); *Hughes v. Rizzo,* 282 F. Supp. 881 (E.D. Pa. 1968) (arrests made for purpose of harassing "hippies"). *See also United States v. Rosen, supra,* and *United States v. Dooley,* 364 F. Supp. 75 (E.D. Pa. 1973) for the converse of this position — that expungement relief is not warranted in the typical case. The basis for the expungement remedy in these cases is that such relief is "necessary and appropriate in order to preserve basic legal rights." *Sullivan v. Murphy, supra,* 478 F. 2d at 968. However, it is not clear whether the relief in most of these cases is predicated solely on the inherent power of an equity court, *Wheeler v. Goodman, supra,* at 65, or constitutional considerations aside from a constitutional right of privacy, *Menard v. Mitchell,* 139 U.S. App. D.C. 113, 118-19, 430 F. 2d 486, 491-92 (1970).

Finally, there are those cases that hold that without regard to legislative action, or to the presence of special circumstances justifying relief, expungement may be ordered. *Davidson v. Dill,* Colo., 503 P. 2d 157 (1972); *Eddy v. Moore,* 5 Wash. App. 334, 487 P. 2d 211 (1971). These cases say:

> "We believe the right of an individual, absent a compelling showing of necessity by the government, to the return of his fingerprints and photographs, upon an acquittal, is a fundamental right implicit in the concept of ordered liberty and that it is as well within the penumbras of the specific guarantees of the Bill of Rights 'formed by

emanations from those guarantees that help give them life and substance.' *Griswold v. Connecticut,* 381 U. S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

"It will take a compelling showing on the part of the state to justify a retention of the fingerprints and photographs. . . ." 487 P. 2d at 217, 503 P. 2d at 161.

Both *Eddy* and *Davidson* involved acquittals. Eddy's case arose on a denial of a writ of mandamus aimed at the chief of police; Davidson's on a dismissal of her complaint for failure to state a claim upon which relief could be granted. The court in *Eddy,* with no findings of fact or testimony before it, ordered return of the fingerprints and photographs. The court in *Davidson,* suggesting a less rigorous application of this compelling necessity test, remanded saying:

"The record here is devoid of any facts showing the need of the police department to keep this plaintiff's arrest records, or the ability of the department to keep them confidential. Who has access to these records, what facts are contained in them, how likely and to what extent information in the records may be disseminated, and what justification exists for their retention in the police files, are all questions, among many, which must be left to the trial court fact-finding process. After factual development, relief may or may not be warranted. Should the court determine the precise relief requested is not appropriate, other means may be formulated to protect plaintiff's right of privacy from any improper invasion. C.R.C.P. 54 (c).

"To hold that this case must be reversed and remanded for adjudication on the merits, however, is not to express an opinion as to what its eventual outcome should be. The issue presented is complex and involves the balancing of the state's interest in

> efficient law enforcement procedures as against a particular citizen's right to be let alone. Only after the facts are fully developed will this be possible."
> 503 P. 2d 162-63.

It is no doubt true, as *Eddy* and *Davidson* hold, that the right of privacy is protected by the Constitution, *Griswold v. Connecticut, supra; Roe v. Wade,* 410 U. S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and that if this right is applicable, regulation limiting it must be justified by a "compelling state interest." *Roe v. Wade,* 410 U. S. at 155-56. However, it is also true that

> "the definitions of privacy which the *Griswold* approach offers are at best descriptions of a widely shared emotional attitude. Analytically, the reasoning of *Griswold* and *Wade* offers no guidance for separating what privacy is from what it is not; it offers no generalizable definition of the right it is used to protect. Indeed, the extreme breadth of the *Griswold* analysis has produced utmost caution in courts called on to apply it . . . ."
> Note, *Privacy in the First Amendment,* 82 Yale L.J. 1462, 1476 (1973).[7]

The Supreme Court has yet to extend the right much beyond the context of intimate relationships. *See, e.g., Loving v. Virginia,* 388 U. S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); *Stanley v. Georgia,* 394 U. S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (possession of obscene matter in the privacy of a person's own home); *Eisenstadt v. Baird,* 405 U. S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (contraception) and *Roe v. Wade, supra* (abortion). And as our examination of the expungement cases reveals, few courts are willing to predicate relief specifically on *Griswold* and *Wade* and one

---

7. In Eisenstadt v. Baird, *infra,* the Supreme Court said, "If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into *matters so fundamentally affecting a person* as the decision whether to bear or beget a child." 405 U. S. at 453 (emphasis added).

of the two courts that has applied *Griswold* went out of its way to soften the application of the compelling interest test. *Davidson v. Dill, supra.*

## II.

We think the lower court was wrong in its fundamental conclusion that because specific legislative authorization to expunge criminal arrest records existed only in connection with certain drug abuse cases,[8] a court of equity was without subject matter jurisdiction to pass upon the merits of appellant's petition or without power to grant the relief prayed. Juridically, jurisdiction of a court of equity refers to two distinct concepts: (1) the power of a court to render a valid decree, and (2) the propriety of granting the relief sought. *Moore v. McAllister,* 216 Md. 497, 141 A. 2d 176 (1958). Appellant's petition asserted an infringement of a claimed constitutional right to privacy by reason of the maintenance and control by the defendants of his criminal arrest record and the absence of an adequate legal remedy to protect the right. We said in *Shryock v. Morris,* 75 Md. 72, 76, 23 A. 68, 70 (1891), that "the court of chancery being a superior court of general jurisdiction, nothing shall be intended to be out of its jurisdiction which is not shown to be so." And, as we observed in *Wells v. Price,* 183 Md. 443, 452, 37 A. 2d 888, 893 (1944), the mere absence of precedent

---

8. Section 292(a) of Article 27 provides:

"Whenever any person who has not previously been convicted of any offense under this subheading or under any other prior law of this State or the laws of the United States or of any other state relating to controlled dangerous substances as defined in this subheading, and who is tried for any offense specified in this subheading and is found not guilty, or where the charges against such person are dismissed in any manner, by either the court or the prosecuting authority, the court, if satisfied that the best interest of the person and the welfare of the people of this State would be served thereby, shall expunge the criminal record resulting from the arrest in such case. No expunged criminal arrest record shall thereafter be regarded as an arrest for purposes of employment, civil rights, or any statute or regulation or license or questionnaire or any other public or private purpose."

Section 292 (b) authorizes expungement of records in certain instances involving persons found guilty of drug offenses for the first time.

would be no bar to the exercise of the jurisdiction of a court of equity "for equity principles are broad and comprehensive and their application is not to be denied merely because of a new subject." It is clear that a court of equity has jurisdiction over issues involving the maintenance of civil rights, *Adams v. Commissioners of Town of Trappe,* 204 Md. 165, 102 A. 2d 830 (1954), and at least in some matters involving consideration of personal rights, *e.g.,* rights protected by the federal or state constitutions. In *Schneider v. Pullen,* 198 Md. 64, 68, 81 A. 2d 226, 228 (1951), we flatly held "that where constitutional questions are involved, the litigant has the right to raise them in a court of equity, and such court has the right to consider them." To the same effect, *see Poe v. Baltimore City,* 241 Md. 303, 216 A. 2d 707 (1966); *Maryland Committee for Fair Representation v. Tawes,* 228 Md. 412, 180 A. 2d 656 (1962); *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387 (1951). *See also Downs v. Swann,* 111 Md. 53 (1909), a case in which a preliminary injunction had been issued upon the filing of a bill in equity to restrain the police authorities from photographing and measuring a person arrested, but not tried and convicted, for embezzling public funds; the bill praying for injunctive relief had alleged that the accused would be irreparably injured by such police activity, that it would violate his personal liberty and constitutional rights, and that he had no adequate remedy at law. In the course of affirming an order dissolving the injunction, our predecessors noted that the accused did not charge in his bill of complaint "that the police intend to put his photograph in their rogues' gallery or distribute copies of it to the police authorities of other cities, unless he is convicted or becomes a fugitive from justice, or that they propose to apply his Bertillon record to any other uses than those of their own department . . . ." 111 Md. at 60. The Court, however, concluded:

> "but we must not be understood by so doing [dissolving the preliminary injunction] to countenance the placing in the 'rogues gallery' of the photograph of any person, not a habitual

criminal, who has been arrested but not convicted on a criminal charge, or the publication under those circumstances of his Bertillon record. Police officers have no right to needlessly or wantonly injure in any respect persons whom they are called upon in the course of their duty to arrest or detain, and for the infliction of any such injury they would be liable, to the injured person, in the same manner and to the same extent that private individuals would be." *Id.* at 64.

*Downs* has been cited as authority for the proposition that a right of privacy may be protected by injunctive relief. *See State ex rel. Mavity v. Tyndall, supra* (66 N.E.2d at 761-62). *Cf. Carr v. Watkins,* 227 Md. 578, 177 A. 2d 841 (1962), recognizing a right of redress in tort for an unwarranted invasion of privacy in a case involving the transmission of derogatory information by the police to the plaintiff's employer; we there noted, citing *Tyndall,* and referring to the dicta in *Downs,* that "[c]ases which have sustained a claim of violation of the right of privacy . . . include those in which the right of one arrested not to have his fingerprints and picture disseminated or exhibited prior to conviction, unless he becomes a fugitive from justice, has been recognized." 227 Md. at 587.

While we said in *Schneider v. Pullen, supra,* that "[t]he Legislature cannot . . . interfere with the judicial process by depriving litigants from raising questions involving their fundamental rights in any appropriate judicial manner," 198 Md. at 68, we have also observed that the exercise of power by a court of equity in matters involving constitutional questions is not favored where statutory remedies exist which permit the raising of such questions. *Kracke v. Weinberg, supra,* 197 Md. at 343. No statutory remedy now exists for expungement of non-drug-related criminal arrest records, although a bill broadly authorizing the expungement of such records, enacted at the 1974 Session of the Legislature (House Bill 122), was vetoed by the Governor for reasons wholly unrelated to the merits of the expungement

concept. See Laws of Maryland, 1974, at page 3090.[9] In view of our conclusion that the lower court did have subject matter jurisdiction, but declined to exercise it in the mistaken belief that absent specific legislative authorization an equity court was without power to adjudicate the merits of appellant's petition, or grant the injunctive or other equitable relief prayed, we shall do no more than vacate the order sustaining the demurrer and granting the motion raising preliminary objection on purely jurisdictional grounds and remand the case for further proceedings in light of the principles herein enunciated. The propriety of granting the relief sought necessarily depends upon the facts and circumstances as may be developed in the case.

> *Order vacated; case remanded for further proceedings consistent with this opinion; costs to abide the result.*

---

9. In his veto message, the Governor stated that he favored the concept of expungement of criminal records in cases where no conviction has been obtained, and said he would "support, and would sign, properly drawn legislation to accomplish that end." That such legislation will be introduced at the forthcoming 1975 Session of the General Assembly is not unlikely.