STATE of Tennessee, Petitioner,

v.

John DOE, Respondent.

Supreme Court of Tennessee.

Oct. 15, 1979.

---

John C. Zimmerman, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for petitioner.

Charles D. Susano, Jr., Doris C. Allen, Knoxville, for respondent; Bernstein, Susano, Stair & Cohen, Knoxville, of counsel.

## OPINION

COOPER, Justice.

We granted certiorari to consider a decision by the Court of Criminal Appeals, holding that the provisions of T.C.A. § 40–4001 et seq. require the destruction, in certain instances, of all records relating to a charge brought against an individual, rather than merely those records open to public inspection. We affirm.

■ The instant case originated with the arrest of the respondent on a charge of making an obscene telephone call. Ultimately, he was acquitted. He then filed a petition under T.C.A. § 40–4001, seeking to have all references to the charges brought against him removed from records maintained by any public official. The statute provides, in part:

All public records of a person who has been charged with a misdemeanor or a felony, and which charge has been dismissed, or no true bill returned by a grand jury, or a verdict of not guilty returned by a jury or a conviction which has by appeal been reversed, shall, upon petition by said person . . . , be removed and destroyed . . . .

At present, the only records as to which there remains any controversy concerning the applicability of the statute are certain jail and identification records, maintained by the sheriff, and a file kept by the office of the district attorney general. The parties have stipulated that, while neither the sheriff nor the district attorney permit public inspection of these records, both distribute them to other law enforcement agencies, at their discretion.[1] The trial judge denied the petition insofar as it sought the destruction of those references to the respondent in materials maintained by the sheriff or the district attorney, holding that these were not "public records" within the meaning of the statute. The Court of Criminal Appeals reversed.

■ As we intimated earlier, it is the State's contention that the statute, when it speaks of the destruction of public records, refers only to those records open to public inspection and thus does not apply to those at issue here.[2] We do not believe that this remedial legislation merits so narrow a construction. Cf. Dailey v. State, 225 Tenn.

472, 470 S.W.2d 608 (1971). As in all instances of statutory interpretation, we must attempt to ascertain and give effect to the intent of the legislature. See, e. g., Parkridge Hospital, Inc. v. Woods, 561 S.W.2d 754 (Tenn.1978); State ex rel. Rector v. Wilkes, 222 Tenn. 384, 436 S.W.2d 425 (1968). In doing so, we rely, whenever possible, primarily upon the ordinary meaning of the language used. Worrall v. Kroger Co., 545 S.W.2d 736 (Tenn.1977). However, in the statute at issue here, the key terms— "public records"—are ambiguous: What is a "public record" depends on the context in which the terms are employed, and among the meanings generally accepted are those that would support the position of either the State or the respondent. Losavio v. Mayber, 178 Colo. 184, 496 P.2d 1032 (1972); Linder v. Eckard, 261 Iowa 216, 152 N.W.2d 833 (1967); MacEwan v. Holm, 226 Or. 27, 359 P.2d 413 (1961). Compare State v. Brantley, 201 Or. 637, 271 P.2d 668 (1954) [records " ' "made by an officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or serve as a memorial of official transactions for public reference" ' "] with Losavio v. Mayber, supra, [" 'all writings made . . . or kept by the state . . for use in the exercise of functions required or authorized by law,' " quoting Colo.Rev. Stat.1963, 113–2–2(2) (1969 Supp.)]. Thus, we must define "public records," for the purposes of this statute, in such a way as to effect the apparent intent of the legislature, as that intent can be derived from the statute as a whole. See Tidwell v. Collins, 522 S.W.2d 674 (Tenn.1975); Corn v. Fort, 170 Tenn. 377, 95 S.W.2d 620 (1936). Cf. Southern Railway Co. v. Fowler, 497 S.W.2d 891 (Tenn.1973).

1. Apparently finding fault with this stipulation, the State has filed a "motion for consideration of post-judgment facts," under rule 14 of the Rules of Appellate Procedure, seeking to bring certain matters to the attention of the court. These matters, if true, were equally true at the time of trial. The purpose of a rule 14 motion is to bring before the court material facts that arise after judgment, not to vary or augment a trial stipulation with facts extant at its entry. The motion is denied.

2. For the purposes of this opinion we will assume, without deciding, that the records at issue in this case are in fact not subject to public inspection. But cf. T.C.A. § 15–401 et seq.

The intent of the legislature in enacting the statute at issue, in our opinion, was to prevent a citizen from bearing the stigma of having been charged with a criminal offense, where he was acquitted of the charge or prosecution of the charge was abandoned. It is common knowledge that the preferment of charges against a citizen can have a severe impact upon his reputation, regardless of whether or not a conviction results, and that this impact can be greatly increased by the dissemination of information concerning the accusation by public officers, with the official sanction that this implies. Concern for this impact has prompted other jurisdictions to make various efforts to limit any lasting prejudice that might result from the mere fact of arrest. *See, e. g., Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972); *Doe v. Commander, etc.,* 273 Md. 262, 329 A.2d 35 (1974); but *cf. Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). *See also* Annot., 46 A.L.R.3d 900. Slight reflection makes it apparent that the similar concerns that prompted our legislature to enact T.C.A. § 40–4001 and its associated provisions would not be satisfied by eliminating only those records of a criminal charge to which the public has access. An equal or greater problem is presented by the dissemination of the internal records of law enforcement agencies to interested persons or organizations, both public and private, as well as by the use of those records by the agencies themselves in the course of their investigations. The stigma that attaches to one charged with a crime can best be minimized only by removing any reference to the accusation in all records maintained by a public officer, whether those records be for public inspection or internal use. Accordingly, for the purposes of this statute, we hold that "public records" refers to all records maintained by a public official, and we thus concur in the finding of the Court of Criminal Appeals that the statute mandates the expunction of the records in dispute in the instant case.

Contrary to the claims of the State, such an interpretation of the statute does not make it unconstitutional. As we have held previously, the determination of what records shall be maintained by a public officer is the prerogative of the legislature, and thus the limitations imposed by this statute do not encroach upon the proper spheres of the other branches of government. *Underwood v. State,* 529 S.W.2d 45 (Tenn.1975). Finally, even were we to assume, as contended by the State, that the "attorney's work product" privilege has any application apart from its relevance to the rules of discovery, and thus would protect the records to the district attorney at issue here, that privilege is not of constitutional dimensions, and thus could be abrogated by statute.

The judgment of the Court of Criminal Appeals is affirmed, and the cause remanded for the implementation of this decision.

BROCK, C. J., and FONES, HENRY and HARBISON, JJ., concur.