**Damon SMITH, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0005–CR–300.**

Court of Appeals of Indiana.

Sept. 12, 2000.

---

**3.** Sherman points to evidence of the jury's knowledge that the medical expense damages would be paid to Armenia's employer and that one-third of the damage award would go to Armenia's attorneys. Sherman contends that the jury's damage award represents its attempt to deprive Armenia's employer and Armenia's attorneys of their share of the award by awarding lost wages and two-thirds of the requested damages for pain and suffering. We reject Sherman's speculation.

Ann M. Skinner, Michael J. Murphy, Legal Intern, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

The case before us today presents an issue of first impression in this state. Appellant-defendant Damon Smith appeals

the trial court's denial of his motion to suppress evidence. Specifically, Smith contends that the use of his DNA profile in the instant case—a profile originally created for use in a prior unrelated case—constitutes an unreasonable warrantless seizure violative of his U.S. and Indiana constitutional rights as well as IND.CODE § 10–1–9–8.

## FACTS

The facts most favorable to the judgment show that in September 1997 Smith was arrested and charged with rape in an unrelated case. The trial court in the 1997 case ordered that Smith provide blood, hair, and saliva samples which were then forwarded to the Indianapolis–Marion County Forensic Services Agency (Crime Lab) for analysis. The record indicates that Smith's DNA profile was used in the 1997 case and that Smith's defense was consent of the alleged victim. Record at 103. The jury in the 1997 case acquitted Smith.

The events giving rise to the instant case also occurred in 1997. During the early morning hours on March 26, 1997, V.O. was asleep in her home when the attack began. The attacker covered her head with clothing, thus preventing V.O. from seeing his face, and raped her. Police investigated the case but were unable to identify a suspect. Then in July 1998, the Crime Lab advised a detective investigating V.O.'s rape[1] that a computer check had shown a tentative match between the DNA recovered following V.O.'s attack and Smith's DNA obtained in the 1997 case. Further DNA testing confirmed that

Smith was the source of the DNA recovered from V.O.

Based on the DNA evidence, on March 2, 1999, Smith was charged with Rape, Robbery, and Burglary. Thereafter, Smith moved to suppress the DNA evidence. The trial court denied Smith's motion, and now he appeals pursuant to Ind. Appellate Rule 4(B)(6).[2] We accepted jurisdiction over this interlocutory appeal on March 20, 2000.

## DECISION AND DISCUSSION

### I. Standard of Review

When this court reviews a ruling on a motion to suppress, we do not reweigh the evidence but consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision. *Haviland v. State*, 677 N.E.2d 509, 513 (Ind.1997). Despite the trial court's failure to explain its rationale for denying Smith's motion to suppress, we may affirm the trial court's judgment on any theory supported by the evidence. *Dowdell v. State*, 720 N.E.2d 1146, 1152 (Ind.1999).

### II. Smith's Constitutional Claims

Smith first argues that the State's use of his DNA sample violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 11 of the Indiana Constitution. The Fourth Amendment to the United States Constitution prohibits police from conducting warrantless searches and seizures except under limited circumstances. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *Perry v. State*, 638

---

1. The detective investigating the rape worked for the Lawrence Police Department.

2. App. R. 4(B)(6) provides in relevant part that:
   [A]ppeal from interlocutory orders shall be taken to the Court of Appeals . . .
   (6) . . . if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

   (a) The appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination thereof is withheld until after judgment, or
   (b) The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case, or
   (c) The remedy by appeal after judgment is otherwise inadequate.

N.E.2d 1236, 1240–41 (Ind.1994); *Wright v. State*, 593 N.E.2d 1192, 1198–99 (Ind. 1992). The language of the Indiana Constitution, Article I, § 11, mirrors the federal protection.[3] *Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind.1999). However, the tests for determining a rights violation differ for the state and federal provisions. *Id.*

### A. Fourth Amendment Analysis

■ The Fourth Amendment protects citizens from warrantless searches of places and items where the individual has an actual expectation of privacy so long as society recognizes that expectation as reasonable. *Id.* However, before deciding whether a search or seizure violates the federal constitutional provision, we must first decide whether a constitutionally relevant search or seizure has taken place. A "seizure" implicates the Fourth Amendment "when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Jones v. State*, 655 N.E.2d 49, 55 (Ind. 1995) (*quoting Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In addition, our supreme court has described a "search" as the "'prying into hidden places for that which is concealed.'" *Moran v. State*, 644 N.E.2d 536, 540 (Ind.1994) (*quoting Lindsey v. State*, 246 Ind. 431, 204 N.E.2d 357, 362 (1965)). More specifically, except when authorized by search warrant or court order, the Fourth Amendment protects Smith's privacy interest not to have the police invade his body and take a blood sample.

*Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

■ In the instant case, Smith has failed to specify how the State's conduct rises to the level of a Fourth Amendment search or seizure. Smith does not complain of the 1997 court order to draw blood, hair, and saliva for a DNA profile. Rather, Smith challenges the use of the DNA obtained in the 1997 case to inculpate him here. However, police conduct in *comparing* Smith's court-ordered DNA sample with the DNA obtained from the V.O. rape is not a Fourth Amendment search or seizure.

The closest analogue to retention of DNA samples is the fingerprint databank. Our supreme court has held that police are not required to destroy an individual's fingerprint records after acquittal. *Mavity v. Tyndall*, 224 Ind. 364, 66 N.E.2d 755 (1946). Balancing the public interest against the individual's right to privacy, the court observed that fingerprint records were "available and valuable only to the expert searching for criminals." *Id.* at 760. Our supreme court has also found that the State's interest in making records of arrested parties outweighed the right to privacy a defendant may have in his arrest records. *Voelker v. Tyndall*, 226 Ind. 43, 47–48, 75 N.E.2d 548, 551 (1947). In *Kleiman v. State*, this court upheld the constitutionality of the statute[4] limiting expungement of arrest records despite a defendant's acquittal. 590 N.E.2d 660, 662 (Ind.Ct.App.1992).

■ Likewise, Smith points to nothing that might suggest that the Crime Lab

---

**3.** The Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Indiana Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

**4.** IND.CODE § 35–38–5–1.

was legally required to destroy Smith's DNA sample after his acquittal in the 1997 case. Furthermore, Smith cites no relevant authority requiring the Crime Lab or other law enforcement agencies to obtain a court order or search warrant before reusing Smith's DNA profile. In short, law enforcement agencies may retain validly obtained DNA samples for use in subsequent unrelated criminal investigations in circumstances such as these presented here.

In addition, we note that the Georgia Court of Appeals decided a case involving similar factual circumstances. In *Bickley v. State*, the defendant's DNA sample, drawn pursuant to a search warrant in a prior unrelated case, was used by different law enforcement personnel to convict him of rape in a subsequent case. 227 Ga.App. 413, 489 S.E.2d 167 (1997). In *Bickley*, the court observed:

> In this case defendant's blood was obtained pursuant to a warrant for the purpose of DNA testing, and that is the only test ever performed on defendant's blood.... What defendant is really objecting to is the *comparison* of his DNA derived from samples taken from victims of crimes other than the one specified in the warrant. We agree with the trial court that "[i]n this respect, DNA results are like fingerprints which are maintained on file by law enforcement authorities for use in further investigations."

*Id.* at 170 (emphasis supplied); *accord Wilson v. State*, 132 Md.App. 510, 752 A.2d 1250, 1272 (2000) ("Once an individual's fingerprints and/or blood sample for DNA testing are in lawful police possession, that individual is no more immune from being caught by the DNA sample he leaves on the body of his rape victim than he is from being caught by the fingerprint he leaves on the window...."); *People v. King*, 232 A.D.2d 111, 663 N.Y.S.2d 610, 614 (1997) ("Privacy concerns are no longer relevant once the [DNA] sample has already lawfully been removed from the body, and the scientific analysis of a sample does not involve any further search and seizure of the defendant's person."). We agree with the decisions of our sister states in so far as they hold that reuse of a criminal suspect's validly obtained DNA sample in a subsequent unrelated criminal investigation does not trigger Fourth Amendment protections.

### B. Indiana Constitutional Analysis

We now address Smith's standing to challenge the DNA profile's reuse.[5] To argue that a search or seizure is unreasonable, Smith "must establish ownership, control, possession, or interest in either the premises searched or the property seized." *Peterson v. State*, 674 N.E.2d 528, 534 (Ind.1996). The property at issue in the instant case is a DNA profile record compiled by the Crime Lab. Smith has failed to show that he has any possessory interest or any other interest in the records kept by the Crime Lab. Inasmuch as Smith has no possessory interest in the

---

5. Our supreme court has noted that "the federal inquiry into standing under the Fourth Amendment focuses, in the most part, on the privacy expectation in the premises searched. While cases interpreting our state constitutional provision have also placed significant focus on the premises searched, independent consideration is given to the defendant's interest in the property seized." *Peterson v. State*, 674 N.E.2d 528, 534 (Ind.1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998). Our supreme court then distinguished the Fourth Amendment's standing requirement from the Indiana Constitution's requirement, observing: "[T]he United States Supreme Court held that a person does not have standing as to seized property in which he has an interest unless, in addition, he has a legitimate expectation of privacy in the premises of the property found." *Id.* at 534 n. 3 (*citing Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and *U.S. v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). Because Smith's constitutional claims involve property seized independent of premises searched, we address the issue of standing along with his Indiana constitutional claim under Article I, Section 11.

profile record, Smith lacks standing to challenge the Crime Lab's use of its own record.

Moreover, our supreme court has recognized that law enforcement agencies are permitted to retain and reuse fingerprint records as well as other records of arrested parties. *See Mavity v. Tyndall,* 224 Ind. 364, 66 N.E.2d 755 (1946); *Voelker v. Tyndall,* 226 Ind. 43, 47–48, 75 N.E.2d 548, 551 (1947). Thus, we find nothing unreasonable with the Crime Lab's retention and reuse of its profile of Smith's DNA. Therefore, Smith's Indiana constitutional claim must fail.

### III. Smith's Statutory Claim

Finally, Smith challenges the denial of his motion to suppress under I.C. § 10–1–9–8. The statute provides in relevant part that "[t]he superintendent is authorized to establish a data base of DNA identification records for convicted criminals, crime scene specimens, unidentified missing persons, and close biological relatives of missing persons." *Id.*[6]

 We begin our analysis by noting that this statute does not expressly exclude records obtained from other sources, that is, DNA profile records obtained—by valid search warrants or court orders—pursuant to criminal investigations not resulting in conviction. It is well settled that law enforcement agencies are permitted to retain arrest records of acquitted individuals for possible use in subsequent investigations. *See Mavity,* 224 Ind. 364, 66 N.E.2d 755; *Voelker,* 226 Ind. 43, 75 N.E.2d 548. Interpreting such nonexclusive language of this statute in conjunction with our supreme court's decisions regarding arrest and fingerprint records, leads us to conclude that the DNA database is not prohibited from storing DNA profile records of an arrestee whose DNA was collected pursuant to a valid search warrant or court order.

Thus, we conclude that the denial of Smith's motion to suppress evidence did not violate the Fourth Amendment to the U.S. Constitution, Article I, Section 11 of the Indiana Constitution, or I.C. § 10–1–9–8. As a result, there was no error.

Judgment affirmed.

SHARPNACK, C.J., and VAIDIK, J. concur.

---

**6.** All fifty states and the federal government have created DNA databases. Robin Cheryl Miller, *Validity, Construction, and Operation* *of State DNA Database Statutes,* 76 A.L.R.5th 239, 252, 2000 WL 279908 (2000).