**STATE of Tennessee, Appellee,**

v.

**Richard K. RIDGE, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 27, 1982.

William M. Leech, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Phillip C. Lawrence, Sp. Prosecutor, Jerry Sloan, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

Leroy Phillips and Larry E. Young, Chattanooga, for appellant.

## OPINION

CORNELIUS, Judge.

Richard K. Ridge, Jr. was convicted of the offense of vehicular homicide and sentenced to ten (10) years in the penitentiary.

Trial testimony showed that appellant left work on February 13, 1981, between 8:15 and 8:30 p.m. Before arriving home shortly before 9:00 p.m., he stopped at a local bar and consumed one beer. Approximately one hour later, appellant and his fiancee drove to the Reflections, a nightclub frequented by the couple and their friends. There Ridge encountered Carla Guy, the victim, and her friend, Sherri Goggin, who was engaged in a fight with another young woman in the nightclub parking lot. Ridge entered the Reflections for a short time but returned to talk with Ms. Guy for a few minutes before getting into Ms. Guy's Pontiac Trans Am with the deceased and Ms. Goggin and driving to the Sportspage, another Chattanooga night-

spot. While at the Sportspage, appellant played pool and drank two more beers.

After leaving the second nightclub, appellant, Guy and Goggin drove down Brainerd Avenue on their way back to the Reflections. When the trio passed the Dunkin' Donuts shop, they slowed to observe a motorist being detained by a group of Chattanooga police officers. As appellant passed the scene, he suddenly accelerated and sped away. Two of the officers pursued the Trans Am until it stopped at a traffic light. When the officers pulled their squad car in front of the car driven by Ridge, appellant put Ms. Guy's vehicle into reverse, and sped away in the opposite direction. Later, the vehicle crashed into a utility pole on Belvoir Avenue, shearing the pole in two and flipping the car onto its top. Ms. Guy, an eighteen-year-old freshman at the University of Tennessee-Chattanooga, suffered extensive head injuries from which she died on February 17, 1981.

When officers arrived at the crash scene, they found appellant incoherent and apparently unconscious. Ridge also had alcohol on his breath and one or two empty beer bottles were found near the car. Appellant was then transported to Erlanger Hospital where blood was drawn from him for medical purposes at 12:27 a.m. At 12:45 a.m., the police requested that a second blood sample be drawn from Ridge.

A medical technologist at the hospital performed a blood alcohol test on the sample taken from appellant at 12:27 a.m. Those test results indicated appellant's blood contained 186 miligrams of alcohol per deciliter of blood which was equivalent to approximately a .12 or .13 percent blood alcohol level.

The second blood sample was drawn at 1:10 a.m. on February 14, 1981, and given to Officer Ray Bowman of the East Ridge Police Department. Bowman sent the sample to a forensic chemist at the T.B.I. Crime Laboratory. Tests performed there on the blood sample showed a blood alcohol content of .15 percent and also 1.0 micrograms per milimeter of methaqualone, a controlled substance found in Quaaludes.

Dr. Ralph N. Baird treated appellant at Erlanger Hospital in the early morning hours of February 14, 1981. He testified he could smell alcohol on Ridge's breath during treatment and further stated that no methaqualone or other major drugs were administered to appellant before the drawings of the blood samples.

On appeal, Ridge presents four issues for determination, the first of which actually encompasses three subissues concerning admission of blood analysis evidence. In the first of these subissues, appellant argues the results of the blood alcohol tests were admitted into evidence in violation of the *ex post facto* prohibitions in the federal and state constitutions.

T.C.A. § 55–10–406(a) and (b) which were in effect on February 13, 1981, provided:

(a) Any person who drives any motor vehicle in the state of Tennessee shall be deemed to have given his or her consent to a test for the purpose of determining the alcoholic or drug content of his or her blood; provided that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person to have been driving, while under the influence of an intoxicant or drug, as defined in § 55–10–405. Any physician, registered nurse, clinical laboratory technologist, or clinical laboratory technician who acting at the written request of a law enforcement officer withdraws blood from a person for the purpose of making such test shall not incur any civil or criminal liability as a result from the negligence of the person so withdrawing. Neither shall the hospital or other employer of any such physician, registered nurse, clinical laboratory technician incur, except for negligence, any civil or criminal liability as a result of the act of withdrawing blood from any person submitting thereto.

If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test, refuses to submit, the test shall not be given; but the com-

missioner of the department of safety shall suspend his or her license.

(b) Any person who is unconscious as a result of an accident or is unconscious at the time of arrest or apprehension or otherwise in a condition rendering him incapable of refusal, shall be subjected to the test as provided for by §§ 55–10–405 —55–10–412, but the results thereof shall not be used in evidence against him or her in any court or before any regulatory body without the consent of the person so tested. Refusal of release of the evidence so obtained will result in the suspension of his or her driver's license, thus such refusal of consent shall give such person the same rights of hearing and determinations as provided for conscious and capable persons in this section.

On May 19, 1981, three months after the accident precipitating this case, the Tennessee General Assembly amended T.C.A. § 55–10–406 by adding subsection (e). The amended statute provided:

Nothing in this section shall affect the admissibility in evidence in criminal prosecutions for aggravated assault or homicide by the use of a motor vehicle only, of any chemical analysis of the alcoholic content of the defendant's blood which has been obtained by any means lawful without regard to the provisions of this section.

Appellant argues that since the alleged crime in this case occurred prior to the effective date of the 1981 amendment to T.C.A. § 55–10–406, the results of tests of blood drawn from him while unconscious are not admissible in evidence. He argues that an attempt to apply T.C.A. § 55–10–406(e) to his case would amount to an *ex post facto* violation.

■ This court need not address this issue as framed by the State and appellant, however. T.C.A. § 55–10–406 applies to tests conducted at the request of law enforcement officers. *See* T.C.A. § 55–10–406(a). The first blood sample drawn from appellant in this case was pursuant to a medical rather than law enforcement request. T.C.A. § 55–10–406 has no applicability to such procedures. The sample of blood drawn pursuant to a medical request was analyzed by hospital personnel and the results of that analysis were properly admitted into evidence. The fact that the blood alcohol analysis performed by the T.B.I. yielded nearly identical results makes any error in the admission of those results harmless. Rule 36(b), T.R.A.P.

■ Appellant claims, however, that admission of any of the blood analysis testimony is improper because of lack of evidence of the purity of the blood sample. He argues that drugs affecting the test results could have been administered to Ridge by emergency or medical personnel prior to the taking of the defendant's blood. No evidence is presented in the record to substantiate appellant's claim of contamination, however. Without such evidence and given the testimony of Dr. Baird that no methaqualone-based drug would have been given to an individual in appellant's condition, this subissue must be considered meritless.

■ In the third subissue of the challenge to the admission of the blood analysis testimony, appellant submits the drug scan evidence was improperly before the jury. We agree with Ridge's assertion. If T.C.A. § 55–10–406(e) is inapplicable to the prosecution of appellant, subsection (b)'s prohibition of introduction of the evidence without the defendant's consent would control.

■ The State argues, however, that reliance upon T.C.A. § 55–10–406(e) would not result in an *ex post facto* violation and would allow introduction of the drug scan evidence obtained by police request. Subsection (e) refers, however, only to "chemical analysis of the *alcoholic* content of the defendant's blood." The State's contention that "alcohol content" should be read to encompass both *drug* and *alcohol* levels in blood samples must be rejected.

Well-established judicial principles guide this Court in its interpretation of legislative enactments. These principles were summarized by Judge Walker in *State v. Wil-*

*liams,* 623 S.W.2d 121, 124 (Tenn.Cr.App. 1981):

> Our role in statutory interpretation is to ascertain and give effect to the intent of the legislature. *State v. Doe,* 588 S.W.2d 549, [551] (Tenn.1979). Such legislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used when read in context of the entire statute. *State v. Southland News Co., Inc.,* 587 S.W.2d 103, [106] (Tenn.Cr.App.1979). Criminal statutes must be strictly construed in favor of the defendant. *Key v. State,* 563 S.W.2d 184, [188] (Tenn.1978).

Giving words their natural and ordinary meaning and construing the statute strictly in favor of the defendant, we cannot agree that the term "alcoholic content" embraces both liquor and other drug levels. In subsection (a) of T.C.A. § 55–10–406, the legislature refers specifically to "the alcoholic or drug content" of blood. Had such a meaning been intended in subsection (e) as well, the words "or drug" could easily have been added to the present language. Because all drugs are not alcohol, however, an unstrained interpretation of T.C.A. § 55–10–406(e) cannot allow for the admission of drug scan evidence in this case. Allowing such evidence to be presented to the jury was, therefore, error.

■ We cannot say that admission of the drug scan evidence was harmless error. Without the drug analysis results, the only evidence of appellant's intoxication which was properly before the jury was the alcohol blood level test results. All other evidence indicated that Ridge had consumed only three beers in the three-and-one-half hour period before the accident and that Sherri Goggin, the surviving passenger, did not think appellant, although appearing "hyper", was "drinking too much to drive" upon leaving the Sportspage.

The trial judge correctly charged the jury on the inference which *may* be drawn from the fact that appellant had a blood alcohol level greater than .10 percent. Judge DiRisio instructed:

> If any person is found by means of a blood test to have ten hundredths of one percent (.10%), or more, by weight of alcohol in his blood, the jury is permitted to infer that such person was under the influence of such intoxicant and that his ability to drive was thereby impaired sufficiently to constitute a violation of the law against driving while under the influence of alcohol.

> However, *you are never required to make the inference.* It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from any blood test result. Also, the inference may be rebutted by other evidence and circumstances.

> It is for the jury to determine, after a consideration of all the evidence: whether to make the inference which the law permits, the correctness of such inference, and what weight is to be given to such evidence.

> If the blood test shows an alcoholic content of five hundredths of one percent (.05%), or less, then no inference shall be created as to whether such person's ability to operate a motor vehicle was impaired. (emphasis added).

We cannot conclude that, in the absence of the drug scan evidence, the jury would still have chosen to draw the inference that appellant was intoxicated. To so conclude would place an inference on too lofty a rung of the evidentiary ladder. A jury is never required to make an inference suggested by the trial court. If, removing the tainted evidence and being left with only evidence of an alcohol blood level greater than .10 percent, we hold that a rational trier of fact would still find appellant guilty beyond a reasonable doubt, we intimate that blood alcohol level testimony is sufficient in and of itself to convict a defendant in like circumstances. Such is not necessarily the case, however. Only a trier of fact can decide to draw the permissible inference of intoxication and then only by examination of *all* the circumstances. Since we cannot say whether this jury

would have drawn this inference in the absence of evidence which was previously considered by it, the judgment must be reversed and the case remanded for a new trial in accord with this decision.

In light of our ruling on this issue, we need not address, at this juncture, the other allegations of error raised by appellant.

The judgment is reversed and the cause remanded.

DWYER and SCOTT, JJ., concur.