# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1997



**FILED**

**January 20, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9612-CC-00485** |
| | ) | |
| Appellee, | ) | |
| | ) | **BENTON COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. JULIAN P. GUINN, JUDGE** |
| **WILLIAM ROY HOPPER,** | ) | |
| | ) | |
| Appellant. | ) | **(VEHICULAR HOMICIDE)** |

**FOR THE APPELLANT:**

**D.D. MADDOX**
MADDOX, MADDOX & MADDOX
105 East Main Street
P.O. Box 430
Huntingdon, TN 38344

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General & Reporter

**KENNETH W. RUCKER**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**G. ROBERT RADFORD**
District Attorney General

**TODD ALAN ROSE**
Assistant District Attorney General
111 Church Street
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, William Roy Hopper, appeals as of right from his conviction of vehicular homicide following a jury trial in the Circuit Court of Benton County. Defendant raises five (5) issues in this appeal: (1) whether the trial court erred by denying his motion to suppress the blood alcohol sample and test results from the sample drawn at Benton County General Hospital; (2) whether the trial court erred by denying his motion to suppress the blood alcohol sample and test results from the sample taken at Vanderbilt University Medical Center; (3) whether it was error for the trial court to allow the prosecution to introduce evidence of the testing of a sample of blood drawn at Vanderbilt University Medical Center from the Defendant without consent and while he was unconscious; (4) whether his constitutional rights were violated by the use of blood samples taken while he was unconscious; and (5) whether a comment by the trial court concerning the contractual status of Smith-Klien-Beecham Laboratories with the State of Tennessee was plain error. We affirm the judgment of the trial court.

On December 15, 1995, State Trooper John Clem was on duty when he came upon a two-car crash on U.S. Highway 641 in Camden, Tennessee, shortly after 8:00 p.m. At the scene he found a blue Chevrolet Lumina, driven by the Defendant, facing southbound and a grey Chevrolet Monte Carlo, driven by the victim, Nelda Johnson, sitting up on a guardrail facing northeast. Trooper Clem radioed for rescue personnel. He then approached the blue car and heard the Defendant making gurgling noises in his throat, and observed that he was still

breathing. Trooper Clem went over to the other car but did not see anyone in the driver's seat. He subsequently discovered the victim in the back seat and was unable to locate a pulse in the victim's neck.

Medical personnel arrived a short time later and confirmed that the victim was dead. Rick Davidson, an emergency medical technician with Camden General, noticed a strong smell of alcohol on Defendant. Trooper Clem also noticed a strong odor of alcohol on the Defendant and in his car. Trooper Clem looked in Defendant's vehicle and discovered a partially consumed six-pack of beer, an empty twelve-pack beer box, another twelve-pack box containing some beers, two empty beer cans in the passenger side floorboard, and a partially full beer bottle in the driver's side door compartment.

The ambulance took the Defendant to Camden General Hospital. Thereafter, Trooper Clem called the Benton County Sheriff's Office and the Camden Police Department, and asked them to send officers to the hospital to request a blood sample from Defendant because he needed to continue his investigation at the accident scene. He also told Lori Lessenberry, the paramedic, that he needed a blood test run on Defendant. Dr. Timothy Linder treated Defendant in the Camden General Hospital emergency room. He testified that he noticed the smell of alcohol on Defendant while he was intubating him. At the request of Dr. Linder, Stephanie Floyd, a medical technologist at Camden General Hospital, collected blood from the Defendant. Floyd ran a cross-match of Defendant's blood in order to determine the type needed for a transfusion. Dr. Linder also requested that another sample be taken for the purpose of determining the Defendant's blood alcohol level. Dr. Linder testified

that he did not recall being asked by a paramedic on behalf of Trooper Clem to draw blood for a blood alcohol test. Floyd sent that blood sample to the Smith-Klien-Beecham Laboratories to be analyzed for alcohol content because Camden General did not have the equipment to perform this analysis.

Dr. Linder decided to transfer Defendant to Vanderbilt University Medical Center because Camden General did not have the resources to treat Defendant. Camden General notified Vanderbilt of the transfer, the Defendant's injuries, and the fact that he smelled strongly of alcohol. When Defendant arrived at Vanderbilt, a registered nurse drew a blood sample from the unconscious Defendant. Because of Defendant's physical condition, he was not asked to sign a consent form. A medical technologist at Vanderbilt analyzed the blood. It showed that Defendant's blood alcohol level was .16. Dr. John Promes was called as a witness by the defense at trial. Dr. Promes was one of the Defendant's attending physicians at Vanderbilt University Medical Center. During cross-examination, Dr. Promes testified that he was aware that a blood sample was taken from the Defendant for blood alcohol analysis. Dr. Promes further testified that he relied on these blood alcohol test results in his care and treatment of Defendant. This sample was destroyed by medical personnel one week later.

Trooper Clem arrived at Camden General after Defendant had been transported to Vanderbilt. He asked about the blood sample from Defendant, and was informed that it "had already gone in with his medical records," so Trooper Clem never received the sample. At this point he requested that a sample of blood be drawn from the victim. This was done and given to Trooper Clem who

sent it to the TBI crime lab for analysis. The analysis showed no alcohol was present in the victim's blood. The analysis by Smith-Klien-Beecham of the blood drawn from Defendant at Camden General showed his blood-alcohol level to be .19. The test was done two days after the accident, and the sample was destroyed one week later because the lab was not aware that the test results would be used in litigation.

While ruling on an objection made by Defendant's counsel, the trial judge stated in the jury's presence that it was his understanding that the State of Tennessee had a contract with Smith-Klien-Beecham Laboratories. The Defense made no objection to this statement. However, a later witness from Smith-Klien-Beecham stated to the jury that he was not aware of any such contract with the State of Tennessee. The jury convicted the Defendant of vehicular homicide.

Defendant's first two issues can be considered together. The uncontradicted proof in this record is that Trooper Clem asked certain persons to request medical personnel at Camden General Hospital to withdraw a blood sample from Defendant for a blood alcohol analysis. However, the medical technologist who drew the sample testified that she did so at the request of Dr. Linder. Dr. Linder confirmed that in the normal course of his work as an emergency room physician, he frequently requests blood alcohol analysis in the treatment of patients. Dr. Linder did not recall anyone asking him to withdraw blood at the request of Trooper Clem. Carol Wells, a nurse in the emergency room at Vanderbilt University Medical Center, testified that she drew blood from the Defendant during the course of his treatment at that facility. The purpose of getting the blood alcohol sample was to know how a patient might react if other

drugs were administered into his system. She further testified that if a patient cannot give consent to draw blood, they do the procedure anyway in order to, if necessary, save the patient's life. There is no question concerning the extensive nature of injuries to the Defendant, and that the Defendant remained unconscious for thirteen (13) days after being admitted to Vanderbilt. Dr. Promes, the attending physician at Vanderbilt, testified that he was aware the blood sample was taken from the Defendant for blood alcohol analysis, and that he explicitly relied on the blood alcohol test results from the Defendant in his care and treatment of Defendant.

Defendant argues on appeal that there is no proof that the blood alcohol test results were actually used for medical purposes either at Camden General Hospital or Vanderbilt University Medical Center. In fact, it is undisputed that the test results from the blood drawn at Camden General were not available until two (2) days after the blood was drawn from Defendant, during which time he had already been transferred to Vanderbilt University Medical Center. However, in State v. Ridge, 667 S.W.2d 502 (Tenn. Crim. App. 1982), our Court held in a vehicular homicide case that "the sample of blood drawn pursuant to a medical request was analyzed by hospital personnel and the results of that analysis were properly admitted into evidence." Id. at 505 (emphasis added).

Even though Trooper Clem attempted to request the hospital personnel to draw blood from the Defendant for a blood alcohol test, the record reflects that this request was never communicated to the medical personnel who actually drew the blood which led to the test results later admitted into evidence in this case. There is nothing in the case law which requires proof that the test results

were actually used for medical purposes. It is only required that the blood be drawn pursuant to a medical request. Therefore, Defendant's first two issues are without merit.

Defendant's third issue that the trial court erred by allowing the prosecution to introduce the test results of a blood sample drawn from Defendant while at Vanderbilt University Medical Center without his consent and while he was unconscious is likewise without merit.

The Defendant argues that since a consent and release form for withdrawal of blood by Vanderbilt was not signed by the Defendant or by anyone else on his behalf, then the use by the State of the test results as evidence was improper. He states in his brief that there is no lawful right for a hospital or medical personnel to draw blood from any patient for medical purposes when the patient refuses, or would refuse, if the patient was able to do so. However, Defendant does not cite any authority to this Court for that proposition or how that proposition would prohibit introduction of the evidence in a criminal case during the State's case in chief. Ridge clearly holds that blood drawn pursuant to a medical request and analyzed for blood alcohol content may be properly admitted into evidence. 667 S.W.2d at 505. While it is correct that Tennessee Code Annotated section 55-10-406(b) provides that the blood alcohol test results of blood drawn from a person who is unconscious or otherwise unable to consent to the test is not admissible without the consent of the person so tested, that statute only applies to situations where a law enforcement officer requests the test to be made. Ridge, 667 S.W.2d at 505. It is conceded by Defendant in his brief that law enforcement officers did not request withdrawal of the blood at

Vanderbilt University Medical Center. Defendant may or may not have a valid dispute with Vanderbilt University Medical Center. However, there is nothing in the law that prohibits introduction of the evidence of the blood alcohol test results from Vanderbilt University Medical Center simply because that institution did not obtain a consent form from Defendant to withdraw the blood.

In his fourth issue, Defendant argues that he is denied his equal protection of the law since he was in a class of persons where evidence of blood alcohol is admitted into evidence when the person is unconscious, but under similar circumstances, blood alcohol test results would not be available against persons who are conscious and able to refuse consent to draw blood.

Defendant cites State v. Tester, 879 S.W.2d 823 (Tenn. 1994) in support of his argument on this issue. In essence, the Defendant argues there are two classes of persons involved in his equal protection argument: Those who are conscious, and those, like himself, who are unconscious when taken to medical facilities for treatment where blood alcohol tests might be advantageous in treatment. We do not feel that the purported classifications set forth by Defendant are subject to equal protection analysis. The case law which allows admissibility into evidence of blood alcohol test results taken pursuant to a medical request does not distinguish between blood drawn from conscious and unconscious persons. Simply because a conscious person might refuse consent to withdraw blood during medical treatment, and therefore prevent the withdrawal of the blood, does not rise to the creation of two classifications which are treated unequally. In his brief, Defendant also makes a passing argument that his rights to due process, his right to be protected from self-incrimination, and his right to

be protected against unlawful searches and seizures, was violated. However, he cites no authority in support of this argument, and therefore it is waived. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). In any event, we find these assertions by Defendant to be without merit.

In his final issue, Defendant argues that it was plain error for the trial court to make a comment, while ruling on an objection made by defense counsel, that Smith-Klien-Beecham Laboratories had a contract with the State of Tennessee to do blood alcohol analysis tests.

The Defendant argues in his brief that it was an issue during the jury trial as to whether or not the Smith-Klien-Beecham Laboratories had a contract with the State of Tennessee to perform the blood alcohol test for use in criminal proceedings. However, he does not cite to any portion of the record where this was a material issue in the case. Tenn. R. App. P. 27(a)(7) and (g); Tenn. Ct. Crim. App. R. 10(b). In any event, our review of the record reflects that whether or not the State had a contract with Smith-Klien-Beecham Laboratories was not a material issue. No objection was made by the Defendant to the trial court's comment. Neither was this issue included in Defendant's motion for new trial. As such, the issue is waived on appeal. Tenn. R. App. P. 36() and 3(c). In any event, we do not feel that the trial court's comments, if error, rise to the level of "plain error" as it does not affect "the substantial rights of an accused." Tenn. R. Crim. P. 52(b).

Finding no error in the issues raised by Defendant, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge


CONCUR:



_____
GARY R. WADE, Judge


_____
JOHN H. PEAY, Judge